**UNITED STATES DISTRICT COURT**
District of New Jersey

CHAMBERS OF
**JOSE L. LINARES**
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

**NOT FOR PUBLICATION**                              December 22, 2009

## LETTER OPINION

Dennis R. LaFiura, Esq.
Day Pitney, LLP
P.O. Box 1945
Morristown, NJ 07932
    *Via electronic filing and electronic mail*

Eric Hicklen
c/o The Company Corporation
2711 Centerville Road, Suite 400
Wilmington, DE 19808
    *Via electronic mail and regular mail*

    Re:    **Jackson Hewitt, Inc. v. JSE Business Development Group, et al.**
            **Civil Action No. 09-5968 (JLL)**

Dear Litigants:

    This matter comes before the Court by way of Plaintiff's application for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Plaintiff's application for a preliminary injunction is **granted.**

### BACKGROUND

    Between December 2006 and January 2008, the parties entered into nine separate Franchise Agreements pursuant to which Defendant JSE Business Development Group, Inc. ("JSE") received the right to operate tax return businesses throughout various territories, including areas within Pennsylvania and California, using Plaintiff Jackson Hewitt, Inc.'s trade names, trademarks and service marks, logos, as well as Plaintiff's proprietary business methods and software. Eric Hicklen, the sole shareholder of JSE provided Jackson Hewitt with personal guaranties of JSE's obligations under the nine franchise agreements.

1

On November 24, 2009, Jackson Hewitt commenced the instant cause of action by way of Order to Show Cause, seeking a preliminary injunction compelling Defendants JSE and Eric Hicklen to adhere to their post-termination obligations pursuant to the parties' franchise agreements. The injunctive relief sought by Jackson Hewitt falls generally into four categories: (1) removal of Jackson Hewitt signage from JSE offices, (2) transfer of all Jackson Hewitt telephone numbers owned by JSE to Jackson Hewitt, and notification by Defendants to the telephone company that Defendants no longer have the right to use such telephone numbers, (3) two year non-compete provision, and (4) return to Jackson Hewitt of all client files. In light of Jackson Hewitt's application, this Court entered an Order on November 24, 2009 directing Defendants JSE and Eric Hicklen to serve and file any answering affidavits or memoranda in response to Jackson Hewitt's application on or before December 11, 2009. A hearing before this Court was scheduled for December 21, 2009. On December 11, 2009, Eric Hicklen requested an extension of time in which to file his response. Mr. Hicklen's requested was granted in part by way of Order dated December 11, 2009, wherein Defendants were directed to respond to Jackson Hewitt's application by Tuesday, December 15, 2009 at 3:00 p.m.

On December 15, 2009, Eric Hicklen filed a two-page response to Jackson Hewitt's application for injunctive relief wherein he: (a) acknowledged that Jackson Hewitt signs remain on the JSE buildings, (b) claimed to have deleted "anything" that was on JSE's computer system and subsequently destroyed such computers, (c) maintained that he would not turn over any client files because, as the "responsible official," he is obligated to retain all such client files for three to eight years, (d) represented that all telephone numbers had been "de-listed," and (e) represented that he is not competing with Jackson Hewitt, in accordance with the non-compete provision of the franchise agreements.

**ANALYSIS**

As a preliminary matter, the Court notes that Eric Hicklen is currently proceeding pro se in this matter. Although Mr. Hicklen may certainly represent himself, a corporation may appear in federal courts only through licensed counsel. See Rowland v. California Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 202 (1993) ("It has been the law for the better part of two centuries, for example, that a corporation may appear in the federal courts only through licensed counsel."); Van De Berg v. C.I.R, 175 Fed. Appx. 539, 541 (3d Cir. 2006) ("As a general matter, a corporation or other business entity can only appear in court through an attorney and not a non-attorney corporate officer appearing pro se.") (quoting Harrison v. Wahatoyas, L.L.C., 253 F.3d 552, 556 (10th Cir. 2001)). JSE has failed to secure licensed legal counsel on its behalf. Hicklen may not appear on behalf of the corporation JSE. Therefore, to date no appearance has been made by JSE and no opposition to Jackson Hewitt's application filed on behalf of JSE. Plaintiff's application is hereby granted in its entirety as to Defendant JSE.

On December 21, 2009, the parties met with Magistrate Judge Claire C. Cecchi. During this conference, Mr. Hicklen agreed to: (1) the removal of Jackson Hewitt signage from JSE offices, and

(2) transfer of all Jackson Hewitt telephone numbers owned by JSE to Jackson Hewitt, and to notify the telephone company that Defendants no longer have the right to use such telephone numbers. The specific terms of the parties' agreement as to these matters were placed on the record before Magistrate Judge Cecchi and will not be addressed herein. Having resolved such matters, the Court will, instead, focus its attention on the remaining two aspects of Jackson Hewitt's request, namely: (1) enforcement of the two year non-compete provision, and (2) the return of client files.

As to such matters, the following factors are undisputed. All nine franchise agreements were terminated. Pursuant to the terms of the franchise agreements, all of which contain nearly identical language, JSE had certain post-termination obligations. Such obligations are set forth in Section 20.3 of the franchise agreements. See Exhibit A to Verified Compl. Defendant Hicklen does not dispute the authenticity of the franchise agreement attached as exhibit A to the Verified Complaint, nor does he dispute that all other applicable franchise agreements between the parties contain nearly identical language (and thus impose the same post-termination obligations).

Pursuant to Section 20.3(c) of the Franchise Agreement, Defendants were obligated to return to Jackson Hewitt, "without retaining any copies, the originals and all copies of all trade secret, confidential and proprietary materials as defined in paragraph 12.3, and to provide Jackson Hewitt with access "to remove all copies of any such items" from JSE's offices and hard drive, and "to delete them from any other computer data storage media." Section 12.3, in turn, identifies "trade secret, confidential and proprietary materials" as the identities of the customers served by JSE (including their names, addresses, phone numbers, social security numbers and financial and tax information), tax return copies, customer lists, mailing labels, W-2s, 1099s, 8453s, work in progress, all "books" and "archives" program disks, book keeping files and any other documents related to services performed on behalf of customers. Pursuant to Section 12.3.2, Defendants acknowledged that "the unauthorized use or disclosure" of such "trade secrets, confidential and proprietary information will cause irreparable injury" and that "damages are not an adequate remedy."

Pursuant to Section 20.3(h) of the Franchise Agreement, Defendants were obligated to comply with certain post-termination covenants found in Section 18 therein. Section 18 of the Franchise Agreement, in turn, provides that "for a period of two (2) years after the earlier of (1) the effective date of termination for any reason, or (2) expiration of this Agreement, or (3) the date of the sale of the Franchised Business or a majority of its assets, neither you nor any of your Owners may directly or indirectly prepare or electronically file individual income tax returns, teach tax courses, offer Financial Products or own, engage in, operate, manage, purchase, invest in . . . franchise, lend money to, lease or sublease to, or agree to sell or sell all or a majority of the assets of the Franchised Business to any Competing Tax Business . . . within the Territory or within an area ten (10) miles outside the boundaries of the Territory." Hicklen maintains that although adherence to this provision has "created a hardship" for him, he is, nonetheless, "not competing" in accordance with such provision.

A party seeking a preliminary injunction must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary

relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004).

Having considered the arguments raised in support of and in opposition to the instant application, the Court finds that Jackson Hewitt has met its burden of demonstrating likelihood of success on the merits as to its breach of contract claim.[1] It is undisputed that the Franchise Agreement directs Defendants to: (a) remove all Jackson Hewitt signage from JSE properties,[2] and (b) return to Jackson Hewitt all client files (that is, all documents bearing the identities of the customers served by JSE, tax return copies, customer lists, mailing labels, W-2s, 1099s, 8453s, work in progress, all "books" and "archives" program disks, book keeping files and any other documents related to services performed on behalf of customers).[3] Hicklen has breached Sections 20.3(c) and 12.3.1 of the franchise agreement by admittedly failing to return his client files to Jackson Hewitt.[4] Similarly, Hicklen has breached Sections 20.3(d) and 20.3(g) by admittedly failing to remove all Jackson Hewitt signage from its offices. Hicklen does not dispute that breach of such provisions has caused Jackson Hewitt to suffer damages. Thus, the Court finds that Jackson Hewitt has met its burden of demonstrating likelihood of success on its breach of contract claim.

The Court likewise finds that Jackson Hewitt has met its burden of demonstrating irreparable harm that will result if restraints are not imposed at this time. Where a party is in possession of another party's confidential information and is poised to use or disclose such information, there is a likelihood of irreparable harm. See, e.g., Nat'l Starch and Chem. Corp. v. Parker Chem. Corp., 219 N.J. Super. 158, 162 (App. Div. 1987) ("Lauria knew trade secrets of National, and . . . under the circumstances there was sufficient likelihood of 'inevitable disclosure,' with consequent immediate and irreparable harm to National, to warrant interlocutory relief preserving the status quo pending trial.") (internal citations omitted); Ace Am. Ins. Co. v. Wachovia Ins. Agency Inc., 306 Fed. Appx. 727, 732 (3d Cir. 2009) (noting that "disclosure of confidential information or trade secrets may

---

[1] Since this Court presently exercises its diversity jurisdiction over Plaintiff's Verified Complaint, the law to be applied is that of the forum state – New Jersey. See Am. Cyanamid Co. v. Fermenta Animal Health Co., 54 F.3d 177, 180 (3d Cir.1995). Furthermore, the parties do not dispute that New Jersey law applies. Accordingly, the Court will apply New Jersey law to Plaintiff's breach of contract claim. To establish a breach of contract claim under New Jersey law, Plaintiff "has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." Murphy v. Implicito, 2005 WL 2447776, at *4 (N.J.Super.Ct.App.Div. Sept.22, 2005) (citing Coyle v. Englander's, 199 N.J. Super. 212, 223 (App. Div. 1985)).

[2] See Section 20.3(d); 20.3(g).

[3] See Section 20.3(c); 12.3.1.

[4] See Hicklen Opp'n Br. at 1 ("The I.R.S. states that the responsible official on the Efin (electronic filing Id number) application must retain all clients documents for 3 to 8 years.").

constitute irreparable harm") (citing Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 92 (3d Cir. 1992)).  This type of irreparable harm flows both from Defendants' failure to return all client files and from Defendants' potential use – or inevitable disclosure – of information contained therein.  That such circumstances may constitute irreparable harm is not only recognized by New Jersey law, but was expressly recognized by both parties in agreeing to the terms of the Franchise Agreement.[5]  Thus, Jackson Hewitt has succeeded in demonstrating the existence of immediate irreparable harm.

As to the remaining two factors – the balancing of hardships and the public interest – the Court finds that any hardship to Defendants in requiring them to adhere to the terms of the Franchise Agreement is de minimis given that such terms were expressly accepted by the Defendants, whereas the hardship faced by Jackson Hewitt should the Defendants be permitted to retain the client files and potentially utilize such information in competing against Jackson Hewitt is significant.  Finally, there is no doubt that the public has an interest in upholding freely negotiated and reasonable business contracts.  As such, the Court determines that the public interest is best served by holding Defendants to the terms of the Franchise Agreement.

## CONCLUSION

Based on the reasons set forth above, Plaintiff's application for a preliminary injunction is **granted.**  An appropriate Order accompanies this Opinion.

    /s/ Jose L. Linares
Jose L. Linares
United States District Judge

---

[5] See Section 12.3.2 of Franchise Agreement ("You acknowledge that the unauthorized use or disclosure of our trade secrets, confidential and proprietary information will cause irreparable injury and that damages are not an adequate remedy.").